Matter of Lung (2020 NY Slip Op 02322)





Matter of Lung


2020 NY Slip Op 02322


Decided on April 16, 2020


Appellate Division, Second Department


Per Curiam



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on April 16, 2020
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Second Judicial Department

ALAN D. SCHEINKMAN, P.J.
WILLIAM F. MASTRO
MARK C. DILLON
RUTH C. BALKIN
JOHN M. LEVENTHAL, JJ.


2018-09536

[*1]In the Matter of Henry Lung, an attorney and counselor-at-law. Grievance Committee for the Tenth Judicial District, petitioner; Henry Lung, respondent. (Attorney Registration No. 3052503.)



DISCIPLINARY PROCEEDING instituted by the Grievance Committee for the Tenth Judicial District. The Grievance Committee commenced a disciplinary proceeding against the respondent by the service and filing of a notice of petition and a verified petition, both dated July 31, 2018, and the respondent served and filed a verified answer dated September 13, 2018. The Grievance Committee then served and filed a statement of disputed and undisputed facts dated September 21, 2018, which the respondent did not challenge. By decision and order on application of this Court dated October 29, 2018, the issues raised were referred to Norma Giffords, as Special Referee, to hear and report. The respondent was admitted to the Bar at a term of the Appellate Division of the Supreme Court in the Second Judicial Department on July 26, 2000.



Catherine A. Sheridan, Hauppauge, NY (Michael Fuchs of counsel), for petitioner.
Robert A. Ungar, P.C., Garden City, NY (Louis Gerstman of counsel), for respondent.



PER CURIAM


OPINION & ORDER
. The Grievance Committee for the Tenth Judicial District served the respondent with a verified petition dated July 31, 2018, containing three charges of professional misconduct. After a prehearing conference on January 8, 2019, and a hearing on March 7, 2019, the Special Referee issued a report dated April 3, 2019, which sustained the charges. The Grievance Committee now moves to confirm the Special Referee's report and for the imposition of such discipline upon the respondent as the Court deems just and proper. The respondent submitted a motion to confirm in part and to disaffirm in part the report of the Special Referee, and requests that this Court consider the mitigating factors presented in determining the measure of discipline to impose.
The Petition
Charge one alleges that the respondent, in representing a client, communicated about the subject of the representation with a party he knew to be represented by another lawyer in the matter, without consent, in violation of rule 4.2(a) of the Rules of Professional Conduct (22 NYCRR 1200.0), as follows:
The respondent represented the father in a matrimonial action in Supreme Court, Queens County. The mother was represented by Morghan Richardson. On or about September 22, 2016, the parties entered into a so-ordered settlement of the matrimonial action, which included a parental access schedule regarding the parties' minor child. Thereafter, on or about February 8, 2017, the mother filed a pro se family offense petition against the father in Family Court, Queens County, seeking, inter alia, an order of protection prohibiting him from having contact with her and with their minor child. The petition was granted and an order of protection was issued.
On May 12, 2017, Richardson emailed the respondent an offer to negotiate outstanding issues between the parties. In response, the respondent sent an email rejecting the offer. His email reply was copied to the mother, and included the following:
"Ever since the beginning of my representation of the father, I have recognized him to be the better parent, meaning the best interests of this child would be met with the child living with him, not your client, as the primary residential parent. Your client has taken enough rope, as the saying goes, and this nonsense needs to come to an end. You are continually advising her to commit acts of contempt of Court & forget about ever asking me to consider anger management.' What really needs to happen here is your client needs to take classes on how to be a much better parent.
* * *
"But I know the truth Morghan, and the truth is that you are a liar. You lie and lie and continually pump your client's head with total garbage just so that her parents (the real money train in all of this) continue to pay you. That is the real and only truth that matters in this entire case."
The same day, Richardson replied and asked the respondent to refrain from contacting her further if he intended on "name-calling" and refusing to work collaboratively. The respondent replied on May 12, 2017, and copied the mother, stating:
"Your client is going to lose custody & if you doubt me, keep sending useless emails like this. The gravy train' will end for you soon enough. Yes I absolutely do think of you as a liar insofar as you are actively advising your client to continue her current position."
On May 14, 2017, the respondent sent a letter to the Honorable Jeremy Weinstein, Administrative Judge, Supreme Court, Queens County, complaining about the manner in which the matrimonial action was handled by the court. The letter also contended that the mother sought the order of protection in Family Court "for only 1 purpose, namely to prevent my client from having visitation with their child." Further, the respondent alleged:
"the [mother's] law firm is actively advising the [mother] to withhold parenting time from my client. I find the actions, words and everything about the lead, main' lawyer from [the mother's] law firm, namely Morghan Richardson, to not have any merit at all. I have learned not to trust anything that she says."
This letter was included in an email sent by the respondent to Richardson on May 15, 2017, and copied to the mother. Richardson replied on the same date and advised the respondent to "stop your direct communications with my client."
The next morning, the respondent sent an email to Richardson, copied to the mother, stating that the mother is in "a clear, obvious position of contempt of Court & she will learn, just as you will, sooner or later that the Court system does not have any tolerance for this type of behavior at all." Richardson replied that day, stating, "That's enough Mr. Lung. Stop wasting my time. I don't believe that you don't know how to delete my client from your replies."
In September 2017, the respondent continued to copy the mother on emails to Richardson. He did so on September 12, 2017, concerning an adjournment in the matrimonial matter. On September 27, 2017, the respondent sent Richardson an email at 1:01 a.m., with a copy to the mother, in which he summarized the history of the matrimonial litigation and blamed Richardson for the duration of the proceeding, stating in part:
"It is because of things like this that clearly explain why this couple has not been divorced yet. I made [the father] aware of this at least 6 months ago but I strongly believe that [the mother] has not been made aware of this at all."
Richardson replied later that morning, again advising the respondent to stop emailing the mother. Later that day, the respondent again copied the mother on an email to Richardson, and stated "[y]our erroneous advice to your own client & lack of attention to this case is truly sickening . . . ."
In the early morning hours of October 23, 2017, the respondent sent three emails to Richardson, copying the mother. In an email sent at 12:34 a.m., the respondent stated, among other things, "[w]hat has happened this year with this case is an utter disgrace. I do not take back or apologize for any of the statements that I made via email from Sept. 13, 2017 until tonight." At [*2]12:48 a.m., the respondent sent another email to which he intentionally attached a copy of an email from the opposing counsel in another divorce action. The respondent's email stated that the attachment was intended to provide an example of "how an already-settled divorce case should be handled when there is no posturing and when the lawyers for both clients actually care enough to ensure that their clients' divorce case is processed as quickly as possible," and further stated, "I leave it up to the both of you to decide for yourselves whether this was ever done in [the matrimonial action between the father and the mother]." At 1:07 a.m., the respondent sent a third email, stating, "I am glad that this process is finally (almost) over & this entire matter should have been handled much differently."
Richardson sent emails to the respondent between October 23, 2017, and October 24, 2017, complaining that he had submitted documents to the court to finalize the matrimonial action without providing her with notice of settlement. The respondent replied by email on October 24, 2017, with a copy to the mother, stating:
"Please stop with your windbagging & your total nonsense & your posturing. You are beyond a shadow of a doubt responsible for this entire delay. Im [sic] sure that this is obvious even to our Judge. If your client does not realize this by now, then she will be left to pay your invoice . . . It has been a dreadful experience working with you & if your client feels any desire to find out the truth, so long as she asks you the correct questions, you will have no defenses or excuses to offer at all."
Charge two alleges that the respondent, in representing a client, used means that had no substantial purpose other than to embarrass or harm a third person, in violation of rule 4.4(a) of the Rules of Professional Conduct (22 NYCRR 1200.0), by sending emails to opposing counsel, copied to opposing counsel's client, which criticized opposing counsel, and accused opposing counsel of engaging in professional misconduct, based upon the conduct described in charge one.
Charge three alleges that the respondent engaged in conduct that adversely reflects on his fitness as a lawyer, in violation of rule 8.4(h) of the Rules of Professional Conduct (22 NYCRR 1200.0), based upon the conduct described in the two charges above.
The Answer
In his verified answer, inter alia, the respondent admitted to communicating via email with another party that he knew was represented by her own lawyer, about the subject of the representation. However, he denied that such communication violated the Rules of Professional Conduct.
The Hearing Evidence
During his testimony, the respondent explained that he was very frustrated by the delay in the matrimonial matter after the parties settled. It was his understanding that Richardson was going to file the requisite paperwork with the court to bring the matrimonial matter to a conclusion, and then failed to do so. Instead, it was around this time that the mother went to Family Court to obtain an order of protection. The respondent believed that the mother did so upon the advice of her counsel, and that such advice was in direct violation of the court-ordered matrimonial settlement, thereby making Richardson a "liar." The respondent also contended that Richardson was a liar because of the unnecessary legal fees she charged in connection with the improper advice provided to the mother.
According to the respondent, after two additional appearances in the matrimonial proceeding, the respondent received an email from Richardson dated May 12, 2017, offering settlement terms that had not been previously discussed. The respondent testified that this offer angered him because he believed Richardson was "taunting" him. Blinded by his own anger, he sent four emails between May 12, 2017, and May 16, 2017, in an attempt to get Richardson and her client to see that they were in violation of a court order. He did not believe that Richardson was communicating this fact to the mother and, therefore, he felt an obligation to make the mother aware of his position.
In explanation of the other emails sent to Richardson and copied to the mother between September 12, 2017, and October 24, 2017, the respondent stated that they were sent due to his frustration with Richardson's lack of cooperation in finalizing the matrimonial matter and to inform the mother that the delay was caused by her attorney.
The respondent testified that he was aware of the rules against communicating with a represented party, but he felt "justified" in disregarding the rules because of his frustration with Richardson. To prevent engaging in such communications in the future, the respondent has started [*3]a practice of drafting emails and then waiting a few hours or until the next day before sending them. He also intends to assess the benefit to a client of a communication with opposing counsel or a judge before engaging in such communication.
The Report of the Special Referee
The Special Referee submitted a report dated April 3, 2019, sustaining all charges. In relevant part, the Special Referee found that the testimony and exhibits clearly establish that the respondent communicated with a party he knew was represented by another lawyer without prior consent (charge one). In addition, when the respondent called Richardson a "liar" and "in effect, greedy,'" the Special Referee found that he used means that had no substantial purpose other than to embarrass Richardson into compliance with his own wishes (charge two). Based on the foregoing, the Special Referee concluded that the respondent engaged in conduct that reflected adversely on his fitness as a lawyer (charge three).
While the respondent acted contrary to the Rules of Professional Conduct, the Special Referee found that he did so in an attempt to zealously represent his client. In mitigation, the Special Referee noted that the respondent was taking positive remedial measures to ensure this conduct would not occur again.
Findings and Conclusion
The Grievance Committee moves to confirm the report of the Special Referee, and for the imposition of such discipline upon the respondent as this Court deems just and proper. The respondent, by his counsel, moves to confirm in part and to disaffirm in part the report of the Special Referee. The respondent submits that the Special Referee properly sustained the three charges of professional misconduct, and requests that this Court consider the evidence in mitigation in determining the appropriate measure of discipline to impose.
Based on the respondent's admissions and the evidence adduced, we find the Special Referee properly sustained the charges. The Grievance Committee's motion to confirm the report of the Special Referee is granted, and the respondent's motion to confirm in part and disaffirm in part the report of the Special Referee is granted to the extent that the charges are sustained and is otherwise denied.
In determining the appropriate measure of discipline, the respondent seeks leniency, and asks this Court to consider: (1) the findings of the Special Referee, who concluded that his actions, while improper, were motivated by his desire to zealously represent his client; (2) that his misconduct was isolated to this one client matter and will not be repeated; and (3) the character evidence provided on his behalf. Notwithstanding the mitigation advanced, we find that the respondent's claims that he acted out of frustration do not justify his violations of the Rules of Professional Conduct. He repeatedly sent emails to a party he knew to be represented, sometimes sending multiple emails on the same day and at inappropriate nonbusiness hours, which emails contained disparaging information in an aggressive tone. We find the respondent did so in an effort to criticize opposing counsel, to accuse her of engaging in professional misconduct, and to try to undermine the relationship between opposing counsel and her client. Even though the respondent knew his actions were improper, and despite being put on notice by opposing counsel that his actions were improper, he continued undeterred and without regard to the Rules of Professional Conduct. We have also considered as an aggravating factor the respondent's extensive disciplinary history, which includes a public censure from this Court (Matter of Lung, 112 AD3d 148), four Admonitions, and two Letters of Caution.
Under the totality of the circumstances, we find that the respondent's conduct warrants his suspension from the practice of law for a period of one year.
SCHEINKMAN, P.J., MASTRO, DILLON, BALKIN and LEVENTHAL, JJ., concur.
ORDERED that the Grievance Committee's motion to confirm the Special Referee's report is granted, and the respondent's motion to confirm in part and disaffirm in part the Special Referee's report is granted to the extent that the charges are sustained and the respondent's motion is otherwise denied; and it is further,
ORDERED that the respondent, Henry Lung, is suspended from the practice of law for a period of one year, commencing May 18, 2020, and continuing until further order of this Court. The respondent shall not apply for reinstatement earlier than February 18, 2021. In such application (see 22 NYCRR 691.11, 1240.16), the respondent shall furnish satisfactory proof that during the period of suspension he (1) refrained from practicing or attempting to practice law, (2) fully complied with this opinion and order and with the terms and provisions of the rules governing the conduct of disbarred or suspended attorneys (see 22 NYCRR 1240.15), (3) complied with the applicable continuing legal education requirements of 22 NYCRR 691.11(a), and (4) otherwise [*4]properly conducted himself; and it is further,
ORDERED that the respondent, Henry Lung, shall promptly comply with the rules governing the conduct of disbarred or suspended attorneys (see 22 NYCRR 1240.15); and it is further,
ORDERED that pursuant to Judiciary Law § 90, during the period of suspension and until such further order of this Court, the respondent, Henry Lung, shall desist and refrain from (1) practicing law in any form, either as principal or as agent, clerk, or employee of another, (2) appearing as an attorney or counselor-at-law before any court, Judge, Justice, board, commission, or other public authority, (3) giving to another an opinion as to the law or its application or any advice in relation thereto, and (4) holding himself out in any way as an attorney and counselor-at-law; and it is further,
ORDERED that if the respondent, Henry Lung, has been issued a secure pass by the Office of Court Administration, it shall be returned forthwith to the issuing agency, and the respondent shall certify to the same in his affidavit of compliance pursuant to 22 NYCRR 1240.15(f).
ENTER:
Aprilanne Agostino
Clerk of the Court